## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **STATE OF LOUISIANA** | * | **CIVIL ACTION NO.:** |
| | * | |
| **PLAINTIFF** | * | **JUDGE:** |
| | * | |
| **VERSUS** | * | |
| | * | **MAGISTRATE JUDGE:** |
| **EXPRESS SCRIPTS, INC.** | * | |
| **EXPRESS SCRIPTS HOLDING, INC.** | * | |
| **ASCENT HEALTH SERVICE, LLC** | * | |
| **CIGNA GROUP** | * | |
| **EVERNORTH HEALTH, INC.** | * | |
| **PRIME THERAPEUTICS, LLC** | * | |
| **HUMANA PHARMACY SOLUTIONS,** | * | |
| **INC.** | * | |
| **HUMANA, INC.** | * | |
| | * | |
| **DEFENDANTS** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C §§ 1331, 1441, 1442, and 1446, Defendant Express Scripts, Inc., joined by The Cigna Group ("Removing Defendants"),[1] hereby give notice of removal of the State of Louisiana's (the "State") Petition for Discovery and Investigation ("Petition" or "Pet.") from the 19th Judicial District Court East Baton Rouge, captioned *State of Louisiana versus Express Scripts, Inc., et al.*, bearing action number C-757095 33 (the "Action").

### INTRODUCTION

1.    The State's Petition contemplates a broad attack on long-standing business practices of pharmacy benefit managers ("PBMs"), challenging PBM and pharmacy services routinely provided by Defendant Express Scripts, Inc. ("Express Scripts"), such as creating and

---

[1] As indicated on the state court docket, Moving Defendants are the only Defendants to have been served as of the date of this filing.  *See*  Ex. A.

1

managing health plan pharmacy networks and negotiating and contracting with pharmacies within those networks; administering drug formularies; and negotiating and passing through manufacturer rebates.   The Petition details conduct that Express Scripts is contractually required to provide and perform at the direction and under the supervision of the federal government, at times acting as its "statutorily authorized alter ego."  *Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 253-54 (4th Cir. 2021).

2.     Removal is warranted under 28 U.S.C. § 1442(a)(1) (the "Federal Officer Removal Statute") based on Express Scripts' role as a provider of PBM and pharmacy services to (1) the Department of Defense's ("DOD") health care program, TRICARE, and (2) health plans participating in the Federal Employee Health Benefits ("FEHB") Program, which is administered and overseen by the U.S. Office of Personnel Management ("OPM").

3.     All four requirements for removal are satisfied in this matter.  In the Fifth Circuit, a party removing under the federal-officer-removal statute must show that (i) it is a "person" within the meaning of the statute, (ii) it acted under a federal officer's direction, (iii) the charged conduct is related to an act performed under a federal officer's direction, and (iv) it asserts a colorable federal defense.  *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020).

4.     Federal courts have repeatedly held in numerous cases involving Express Scripts and other PBMs that claims challenging the provision of PBM services are properly removed under the Federal Officer Removal Statute based on the PBM's involvement in providing such services to federal employees under detailed and closely controlled contracts with the federal government.  *See, e.g., Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 180 (1st Cir. 2024) (reversing district court's remand order because PBM "performed the challenged conduct jointly for private parties and the federal government"); *Cnty. Bd. of Arlington*, 996 F.3d at 253-57

2

(reversing district court because "removal under the federal officer removal statute was appropriate" because Express Scripts is "essentially acting as the statutorily authorized *alter ego* of the federal government" in administering TRICARE); *Grider Drugs, LLC v. Express Scripts, Inc.*, 500 F. App'x 402, 403-04 (6th Cir. 2012) ("The action was properly removed to federal court by Express Scripts."); *Hawai'i ex rel. Lopez v. CaremarkPCS Health, L.L.C.*, No. CV 23-00464 LEK-RT, 2024 WL 1907396, at *14 (D. Haw. May 1, 2024) (denying motion to remand to state court on federal officer removal grounds and finding state's waiver ineffective); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2023 WL 166006, at *8 (N.D. Ohio Jan. 12, 2023) (denying motions to remand); *see also Body & Mind Acupuncture v. Humana Health Plan, Inc.*, No. 1:16-cv-211, 2017 WL 653270, at *3 (N.D. W.Va. Feb. 16, 2017) ("Humana is entitled to take advantage of the Federal Officer Removal Statute in this case.").

### NATURE OF THE REMOVED ACTION

5.      On January 6, 2025, the State, acting through its Attorney General filed this Petition in the 19th Judicial District Court East Baton Rouge Parish (the "State Court").  Jan. 6, 2025 Pet. for Discovery and Investigation.[2]

6.      The Petition names the following Defendants: Express Scripts; Express Scripts Holding, Inc.; Ascent Health Services LLC; The Cigna Group; Evernorth Health, Inc.; Prime Therapeutics, LLC; Humana Pharmacy Solutions, Inc.; and Humana, Inc.[3]

### A.  Express Scripts' Removal as a Federal Officer

---

[2] As required by 28 U.S.C. § 1446(a), "all process, pleadings, and orders" served on the Defendants in the Action below, including the Petition, are attached hereto as Exhibits A-S.

[3] Defendants assume the State intended to file suit against The Cigna Group and Ascent Health Services LLC despite the State's incorrect naming in the case caption. Defendants cannot, however, discern to what entity the State intended to refer in including "Express Scripts Holding, Inc." No such entity exists.

7.     Defendant Express Scripts files this Notice of Removal of the basis of the Federal Officer Removal Statute.  Because Express Scripts may properly remove this case pursuant to 28 U.S.C. § 1442(a)(1), the entire Action should be removed, including all claims against all other Defendants.  *Morgan v. Huntington Ingalls, Inc.*, 879 F. 3d 602, 606 n.4 (5th Cir. 2018) ("Section 1442(a)(1) authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency") (citing 14C Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 3726 (Rev. 4th ed. 2024)); *Humphries v. Elliott Co.,* 760 F.3d 414, 417 (5th Cir. 2014) ("Removal under § 1442(a), unlike removal under § 1441, does not require the consent of co-defendants.").

**B.  Express Scripts' Provision of Services to the Federal Government**

8.     Express Scripts provides a range of PBM and pharmacy services for the DOD and OPM pursuant to its TRICARE and FEHB duties.  Depending on the program, as described further below, these services include but are not limited to creating and managing health plan pharmacy networks; negotiating and contracting with pharmacies within those networks; administering drug formularies; operating mail order pharmacies; and negotiating and passing through manufacturer rebates.  The range of services offered are available to Express Scripts' federal government, state government, and commercial clients alike.

**i.     Express Scripts' TRICARE Duties**

9.     Since 2003, Express Scripts has provided PBM and pharmacy services for the DOD health care program, TRICARE, pursuant to a detailed contract issued and administered by the Defense Health Agency ("DHA"), a component of the DOD.  TRICARE is one of Express Scripts' largest and most important contracts.  *See In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006,

at *2-3 ("The contract between the DoD and ESI is substantial—the DoD is ESI's second largest client . . . The DoD-ESI contract is memorialized in a lengthy . . . Statement of Work.").

10.     TRICARE, funded by Congress, is the program the DOD utilizes to administer the statutory health care entitlement guaranteed to military members, their dependents, and their survivors.[4]  It provides health and pharmacy benefits "for approximately 9.5 million active duty and retired members of the Uniformed Services, and their spouses and children."[5]

11.     The Military Health System identified 115,878 TRICARE beneficiaries in Louisiana as of 2023.[6]  Many of those beneficiaries depend on ESI's work for TRICARE for their prescription drugs.

12.     Express Scripts' TRICARE Cont., *see* Exhibit T, "contains detailed requirements" that Express Scripts must comply with when delivering PBM and pharmacy services under the contract.  *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *3.  The contract dictates nearly every aspect of Express Scripts' responsibilities in supporting TRICARE.  Express Scripts is required to comply with all of these contractual requirements "along with the statutes, regulations and policy manuals governing the TRICARE program."  *Cnty. Bd. of Arlington*, 996 F.3d at 252.  Compliance is monitored by significant and ongoing supervision and audits by DOD and DHA officials.

---

[4] The federal statutes and regulations governing TRICARE include 10 U.S.C. §§ 1071, 1072(7), 1073(a), 1074(g) and 32 C.F.R. §§ 199.17, 199.21.

[5] *See* Exhibit T, a true and correct copy of the public contract between the DOD and Express Scripts, Inc. with an effective date of July 13, 2020, Cont. No. HT-9402-21-C-0007 (the "TRICARE Cont."), with certain redactions consistent with the Freedom of Information Act, at C.1.

[6] *See* Health.mil, Patient Numbers by State, https://www.health.mil/Military-Health-Topics/MHS-Toolkits/Media-Resources/Media-Center/Patient-Population-Statistics/Patient-Numbers-By-State.

13.     Express Scripts' TRICARE duties are broad.  Among other things, Express Scripts' duties include providing and managing retail pharmacy networks; managing the TRICARE Specialty Pharmacy Program; operating the TRICARE Home Delivery/Mail Order Pharmacy ("TMOP"); and administering the "DOD Uniform Formulary" (a list of drugs covered by TRICARE) "based upon the[ir] relative clinical effectiveness and cost effectiveness," 32 C.F.R. § 199.21(a)(3)(ii).  *See, e.g.,* TRICARE Cont., Exhibit T at C.1 (requiring Express Scripts to "perform claims adjudication, administer a retail pharmacy network, operate TMOP, process reimbursements . . . perform clinical reviews, and provide…support services").

14.     Express Scripts' TRICARE pharmacy network duties include providing and managing retail pharmacy networks and negotiating and contracting with pharmacies within those networks; adjudicating and managing the claims and reimbursement process for prescriptions filled at those pharmacies, including specialty drug prescriptions,; and ensuring pharmacy compliance with requirements set forth by federal law and DOD regulations.  Exhibit T at C.1 (requiring Express Scripts to "process reimbursements for claims filled at retail network and non-network pharmacies"); C.11.6 (requiring Express Scripts to "reimburse pharmaceuticals dispensed through [retail] pharmacies as directed by the Government"); G.3.6.7 (detailing process for pharmacy reimbursement); G.3.6.11.1 (requiring that "[c]laims from network pharmacies . . . be paid in accordance with the agreements which exist between [Express Scripts] and its network pharmacies"); *see also United States v. Fisher*, No. 21-11879, 2022 WL 4138863, at *2 (11th Cir. Sept. 13, 2022) ("In its role as TRICARE's pharmacy benefits manager, Express Scripts creates and manages the network of pharmacies eligible to fill TRICARE prescriptions by contracting with those pharmacies on behalf of TRICARE.").  Express Scripts does not negotiate a separate TRICARE-specific provider agreement with retail pharmacies.  Rather, to enhance cost savings

and network quality, Express Scripts negotiates with pharmacies for all its clients, including the DOD, commercial, state, and other federal government clients, collectively.  Clients, including the DOD, utilize Express Scripts' pharmacy networking services for these very benefits.

15.    Express Scripts' pharmacy network duties are performed pursuant to the DOD's "detailed regulation, monitoring, [and] supervision," as spelled out in the TRICARE Contract. *Cnty. Bd. of Arlington*, 996 F.3d at 253.  Any deviation "shall be subject to Contractor desktop audits and, if necessary, on-site audits at the direction of the Government."  *Id.*

16.    The DOD dictates details as specific as the size of its pharmacy network and location of the pharmacies in that network.  *See, e.g.*, Exhibit T at C.3.3 (requiring Express Scripts to set up "[n]o fewer than 35,000 retail network pharmacies" that meet access requirements throughout all 50 states, as well as other detailed credentialing standards and exclusions).  The DOD also requires Express Scripts to act as a "Fiscal Intermediary . . . for the Government to disburse Government funds for health care benefits."  *Id.* at G.3.6.1.  The DOD further mandates that Express Scripts perform "Government-directed" audits of these network pharmacies, pursuant to government specifications, and make "adjustments, corrections, or cancellations necessary for claims processed."  *Id.* at C.10.  The DOD authorizes Express Scripts to remove pharmacies from the network for "fail[ing] to meet credentialing standards" or "indications of potential fraud."  *Id.* at C.3.3.9.1.

17.    Express Scripts also manages the TRICARE Specialty Pharmacy Program.  In doing so, it ensures all specialty pharmacies within the TRICARE network are fully licensed and accredited, evaluates and "propose[s] updates" to the DOD's specialty drug list for the Program, and incorporates cost controls, utilization strategies, and commercial best practices aligned with

the TRICARE benefit design, among other duties. *Id.* at C.4. The DOD directs and oversees these duties. *Id.*

18. Express Scripts also operates the mail order pharmacy for TRICARE, TMOP, helping the DOD meet its statutory obligation to deliver certain prescription medications directly to TRICARE beneficiaries by mail. Exhibit T at C.6.1. Express Scripts is subject to a detailed DOD Statement of Work dictating how prescriptions are dispensed and is required to report on its service. *Id.* at C.6.1.23.7, C.6.5. The DOD's Statement of Work details "pricing, eligibility verification, shipping, payment and many other specifications" for TMOP. *Cnty. Bd. of Arlington*, 996 F.3d at 252–54. And "[t]o ensure that Express Scripts, Inc. is complying with the terms of the contract, DOD has designated a contracting officer who is charged with managing the [statement of work]." *Id.* at 252.

19. Express Scripts administers the DOD Uniform Formulary for TRICARE. The TRICARE Contract requires the use of the DOD's formulary, a tiered cost-sharing structure, and a preference for generic over branded products. *See* Exhibit T at C.1, C.2.8.3. The formulary is "managed by DOD Pharmacy and Therapeutics P&T Committee." *Id.* at C.1. The formulary "specifies which drugs are authorized for TRICARE members and sets requirements for prior authorization and utilization reviews, to assure 'medical necessity, clinical appropriateness and/or cost effectiveness.'" *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at * 3 (citation omitted).

20. These formulary requirements are mandated by Congress. 10 U.S.C. § 1074g(a)(2)(A) (requiring program to include a "uniform formulary" and that inclusion on the formulary "shall be based on the relative clinical and cost effectiveness of the agents"); § 1074g(b) (requiring the establishment of a "Pharmacy and Therapeutics Committee"). Congress not only

requires specific cost-sharing, but it has spelled out the precise cost-sharing amounts for the years 2018 through 2027 in a table written into the statute:

| For: | The cost-sharing amount for a 30-day supply of a retail generic is: | The cost-sharing amount for a 30-day supply of a retail formulary is: | The cost-sharing amount for a 90-day supply of a mail order generic is: | The cost-sharing amount for a 90-day supply of a mail order formulary is: | The cost-sharing amount for a 90-day supply of a mail order non-formulary is: |
|---|---|---|---|---|---|
| 2018 | $11 | $28 | $7 | $24 | $53 |
| 2019 | $11 | $28 | $7 | $24 | $53 |
| 2020 | $13 | $33 | $10 | $29 | $60 |
| 2021 | $13 | $33 | $10 | $29 | $60 |
| 2022 | $14 | $38 | $12 | $34 | $68 |
| 2023 | $14 | $38 | $12 | $34 | $68 |
| 2024 | $16 | $43 | $13 | $38 | $76 |
| 2025 | $16 | $43 | $13 | $38 | $76 |
| 2026 | $16 | $48 | $14 | $44 | $85 |
| 2027 | $16 | $48 | $14 | $44 | $85 |

10 U.S.C. § 1074g(a)(6)(A).

### ii. Express Scripts' FEHB Duties

21.     Under FEHB contracts, Express Scripts provides PBM and pharmacy services to federal employees, eligible retired federal workers, and their survivors and dependents, including individuals in Louisiana.[7]

22.     FEHB, operated by OPM, is "a comprehensive program of health insurance for federal employees." *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 91 (2017) (citation omitted) (internal quotation marks omitted)..

---

[7] FEHB provides pharmacy and PBM services to a significant number of federal employees across the country, including those in Louisiana.  According to a 2017 report from OPM, 47,152 Louisiana employees are classified as annuitants and would therefore be eligible to enroll in a FEHB plan.  U.S. Office of Personnel Mgmt., *Federal Civilian Employment* (Sept. 2017), https://www.opm.gov/policy-data-oversight/data-analysis-documentation/federal-employment-reports/reports-publications/federal-civilian-employment/.

23.     FEHB "assigns to OPM broad administrative and rulemaking authority over the program," *id.* (citing 5 U.S.C. §§ 8901–8913), and directs OPM to contract with private insurers called "carriers" ("FEHB-carriers") to manage day-to-day administration of FEHB plans under OPM direction, 5 U.S.C. § 8902(a).

24.     All FEHB plans must provide prescription drug coverage.  To help administer those essential prescription drug benefits, OPM expressly directs FEHB-carriers to contract with PBMs such as Express Scripts to provide and manage retail pharmacy networks; negotiate and contract with pharmacies within those networks; administer formularies; and negotiate and pass through manufacturer rebates, among other things.  *See, e.g.*, 48 C.F.R. § 1602.170-16.

25.     OPM directs and oversees Express Scripts' services by setting detailed "PBM standards," which OPM require FEHB-carriers to include in all PBM contracts.[8]  OPM  "has the overall responsibility for the administration of the FEHB Program" and exercises oversight over carriers.[9]  OPM may also audit Express Scripts' books and records, as well as the physical premises where Express Scripts performs work.  Standard Cont. Changes at 1.26.[10]

---

[8]  *See, e.g.*, OPM, FEHB Program Carrier Letter No. 2024-02 (Jan. 25, 2024), https://www.opm.gov/healthcare-insurance/carriers/fehb/2024/2024-02.pdf (revising PBM transparency standards); OPM, FEHB Program Carrier Letter No. 2016-12(c) (Aug. 24, 2016), https://www.opm.gov/healthcare-insurance/carriers/fehb/2016/2016-12c.pdf (proposing standard contract changes).  OPM sets and frequently updates PBM standards via carrier letters and then integrates those requirements into a standard contract.  *See, e.g.*, OPM, FEHB Program Carrier Letter Changes to the Standard Cont. for Cont. Year 2022 (Aug. 12, 2021) ("Standard Cont. Changes"), https://www.opm.gov/healthcare-insurance/carriers/fehb/2021/2021-14c.pdf.

[9]  OPM, FEHB Handbook, https://www.opm.gov/healthcare-insurance/healthcare/reference-materials/fehb-handbook/#:~:text=OPM%20Responsibilities,This%20includes:&text=contracting%20for%20and%20approving%20or,participation%20in%20the%20FEHB%20Program;&text=negotiating%20benefit%20and%20rate%20changes%20with%20carriers.

[10] *See also*, OPM Off. of the Inspector Gen. Office of Audits, Report No. 1H-02-00-18-018, Ltd. Scope Audit of the Gov't Emps. Health Ass'ns Drug Mfr. Rebates as Administered by Express Scripts Inc for Cont. Years 2013 and 2014 (Oct. 18, 2018),

26.     Express Scripts provides and manages health plan pharmacy networks for its FEHB-carrier clients.  In doing so, Express Scripts is subject to OPM's "standards related to pharmacy network management," which OPM mandates be included in all PBM contracts.  *Id.* (mandating that FEHB-carriers "ensure and report that . . . [OPM specified] standards are included in new, renewing or amended contracts with [PBMs] providing services").  These standards require, for example, that the FEHB-carriers' contracts with Express Scripts "define the scope of [Express Scripts']" pharmacy network services, "[e]stablish[] criteria" for the pharmacy network and "measures actual performance in comparison to those criteria," and "establish a quality and safety mechanism" for drug distribution by the network.  *Id.*  Express Scripts' compliance with these standards is subject to OPM audits and supervision.  *Id.*

27.     Similar to TRICARE, Express Scripts does not negotiate separate FEHB-specific provider agreements with retail pharmacies.  Rather, to enhance cost savings and network quality, Express Scripts negotiates with pharmacies for all its clients, including FEHB carriers, collectively.

28.     Express Scripts also administers its standard National Preferred Formulary ("NPF") on behalf of its FEHB-carrier clients, which it must  administer in compliance with OPM standards and is subject to OPM monitoring.  5 U.S.C. § 8902.

29.     Express Scripts conducts manufacturer rebate negotiations that benefit FEHB-carriers.  OPM requires that FEHB-carriers' contracts with Express Scripts address these negotiations.  Standard Cont. Changes at 1.26.  For example, OPM requires that FEHB-carrier contracts with PBMs require quarterly and annual reports by those PBMs regarding "Manufacturer

---

https://oig.opm.gov/reports/audit/limited-scope-audit-government-employees-health-associations-drug-manufacturer.

Payments," such as rebates negotiated with drug manufacturers. *Id.* OPM further requires FEHB-carrier contracts contain provisions to control how PBMs, such as Express Scripts, incorporate rebates into reported pricing. *Id.* PBMs that "negotiate" or "collect" rebates must "credit to the Carrier either as a price reduction or by cash refund the value [of] all [rebates] properly allocable to the Carrier." *Id.* During the relevant time period, Express Scripts conducted manufacturer rebate negotiations simultaneously on behalf of federal government plans, including FEHB plans, state government plans, and commercial plans collectively. None of these manufacturer rebate negotiations were exclusive to FEHB plans. Rather, all rebate negotiations that involved FEHB plans involved other federal, state, and commercial plans as well. The collective volume of covered lives for which Express Scripts negotiates aids in its negotiations with manufacturers.

### C.  The Allegations in the Petition

30.    The State's Petition asserts three probable violations of law. The first count asserts a probable violation of Louisiana's Monopoly Act, La. R.S. 51:121; the second count asserts a probable violation of Louisiana's Unfair Trade Practices Act, La. R.S. 51:1401; and the third count asserts probable unjust enrichment in contravention of La. Civil Code Art. 2298.

31.    The Petition alleges a "conspiracy" between "Defendants Express Scripts, Inc. and Express Scripts Holding, Inc. . . . [11] and two of its direct competitors, Prime Therapeutics, LLC and Humana Pharmacy Solutions, LLC, to fix pharmaceutical reimbursement rates and related fees in Louisiana." Pet. ¶ 3. The State further challenges standard PBM practices and services, including "negotiations for rebates from pharmaceutical manufacturers," PBMs' relationships with pharmacies in "administer[ing] prescription drug benefits" and creating and managing pharmacy networks, and designing and administering drug formularies. *See, e.g.*, Pet. ¶¶ 4, 26-27, 29, 35,

---

[11] As stated above, supra n.2, "Express Scripts Holding, Inc." does not exist.

58-80, 96-102, 105-09.  These are activities that, as shown above, Express Scripts provides pursuant to its TRICARE and FEHB-carrier contracts.

32.    The State seeks production of "all data related to pharmaceutical pricing, rebates, fees, pharmacy network agreements, transactions with Louisiana Pharmacies, benefits paid or denied to Louisiana citizens, and all other information pertaining to" its Petition.  Pet. ¶ 115. As many of the practices about which the State seeks are mandated under government contract, or performed jointly with those it performs for the federal government, the State seeks discovery for activities governed by Express Scripts' federal TRICARE and FEHB contracts.  Express Scripts is therefore entitled to a federal forum.

### VENUE AND JURISDICTION

33.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 98, 1391, 1441(a), and 1442 because the 19th Judicial District Court East Baton Rouge Parish, where the Petition was filed, is a state court within the Middle District of Louisiana.

34.    This Court has subject matter jurisdiction under 28 U.S.C. §1442(a) and §1446(a) because this case was properly removed under the Federal Officer Removal Statute.

### GROUNDS FOR REMOVAL

35.    Express Scripts is entitled to remove this Action on the basis of the Federal Officer Removal Statute.[12]  Any person "acting under" a federal officer who has matter brought against them "for or relating to any act under color of such office," may remove to federal court.  28 U.S.C. § 1442(a)(1).

---

[12] Other defendants have removed to federal court similar Petitions for Investigation and Discovery filed by the State in state court.  *See, e.g., State of Louisiana v. BP Prods. N. Am., Inc., et al.*, Notice of Removal, ECF No. 1 (E.D. La. June 21, 2010).

36.    In the Fifth Circuit, a party seeking removal under the Federal Officer Removal Statute must show: (i) it is a "person" within the meaning of the statute, (ii) it acted under a federal officer's direction, (iii) the charged conduct is related to an act performed under a federal officer's direction, and (iv) it asserts a colorable federal defense. *Latiolais*, 951 F.3d at 296.

37.    The Federal Officer Removal Statute protects "the very basic interest in the enforcement of federal law through federal officials." *Willingham v. Morgan*, 395 U.S. 402, 406 (1969). "One of the most important reasons for [federal officer] removal is to have the validity of the defense of official immunity tried in a federal court. The officer need not win his case before he can have it removed. In cases like this one, Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum." *Id.* at 407.

38.    The Supreme Court has made clear that federal officers and persons acting under "[federal] officers should have the opportunity to *present their version of the facts* to a federal, not a state, court," including their federal defenses. *Osborn v. Haley,* 549 U.S. 225, 249 (2007) (citation omitted) (internal quotation marks omitted). As such, the Federal Officer Removal Statute must be "liberally construed." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007). The Fifth Circuit has adopted this broad interpretation of the Federal Officer Removal Statute. *Latiolais*, 951 F.3d at 290 ("The Court has consistently urged courts to avoid 'a narrow, grudging interpretation of § 1442(a)(1).'") (citations omitted). When evaluating whether removal under § 1442 is appropriate, courts "must accept the factual allegations in [the] notice of removal as true and construe them in the light most favorable to [the removing party]." *Mohr v. Trs. of Univ. of Penn.*, 93 F.4th 100, 104 (3rd Cir. 2024); *Texas v. Kleinert*, 855 F.3d 305, 312 (5th Cir. 2017) ("courts must 'credit' [the defendants'] theory of the case'").

14

39.    To the extent the State challenges "whether the challenged act[s are] outside the scope of [Express Scripts'] official duties, or whether [they were] specifically directed by the federal Government, [it] is one for the federal—not state—courts to answer." *Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014) (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 138 (2d Cir. 2008)); *cf. Willingham v. Morgan*, 395 U.S. 402, 409 (1969) (defendant "should have the opportunity to present their version of the facts to a federal, not a state, court.").

40.    Successful removal on any basis by any party under the Federal Officer Removal Statute removes the entire case against all Defendants. *See* 14C Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 3726 (Rev. 4th ed. 2023) ("Because Section 1442(a)(1) authorizes removal of the entire action even if only one of the controversies it raises involves a federal officer or agency, the section creates a species of statutorily-mandated supplemental subject-matter jurisdiction."); *see also Baker v. Atl. Richfield Co.,* 962 F.3d 937, 945 (7th Cir. 2020) ("'removal need not be justified as to all claims asserted in the Plaintiffs' complaint; rather, the defense need only apply to one claim to remove the case'") (citation omitted); *Morgan,* 879 F. 3d at 606 ("If the case is removable by Avondale, the entire case will be deemed removable, such that Morgan's claims against all other defendants, including Murphy Oil, will be heard in federal court as well."). This is unlike other removal statutes where consent of all parties is required to remove the case. *See, e.g.*, 28 U.S.C. § 1446(b)(2)(A).

## A.  Express Scripts Is a "Person" Within the Statute's Meaning

41.    Express Scripts is a "person" under the federal-officer removal statute because "corporations are 'persons' for removal pursuant to Section 1442." *Neal v. Ameron Int'l Corp.*, 495 F. Supp. 3d 375, 386 (M.D. La. 2020) (quoting *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (5th Cir. 1998)).

**B.  Express Scripts Is a "Person Acting Under" a Federal Officer's Directions**

42.     Express Scripts is a person acting under a federal officer's directions in performing its TRICARE and FEHB duties.

43.     A private contractor acts under a federal officer when it "helps the Government perform a job that, 'in the absence of a contract . . . , the Government itself would have to perform[.]" *Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340, 348 (5th Cir. 2024) (quoting *Watson* 551 U.S. at 151-52)).

44.     The "acting under" requirement contemplates a relationship in which the government exerts some "subjection, guidance, or control" over a private entity beyond mere compliance with the law.  *Watson*, 551 U.S. at 151 (citation omitted).  The central question is whether the private entity is helping a federal officer "fulfill other basic governmental tasks" that "in the absence of a contract with a private firm, the Government itself would have had to perform."  *Id.* at 153–54.

45.     Although contractual privity is not required to establish that a person was "acting under" a federal officer, *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 341 F. Supp. 2d 351, 358 (S.D.N.Y. 2004), agreements with detailed requirements and provisions for ongoing oversight by government officials evidence that a federal contractor is "acting under" a federal officer.  *See, e.g., Cnty. Bd. of Arlington,* 996 F.3d at 252 (noting that Express Scripts' TRICARE Contract contains "detailed requirements" as to "[p]ricing, eligibility verification, shipping, payment and many other specifications"); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1087 (noting that "contracts [between FAA and corporation seeking to remove] included precise specifications").

46.    Consistent with the Supreme Court's instruction that the statute be "liberally construed," *Watson*, 551 U.S. at 147, federal appellate courts recognize a broad range of federal contractors who satisfy the statute's "acting under" prong.  *See, e.g., Caris MPI,* 108 F.4th at 348 (holding private insurance company was acting under federal officer in providing health insurance through Medicare Advantage program); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017) (holding private manufacturer was acting under federal officer in manufacturing under military contracts); *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017) (holding rural electric cooperative satisfied statute stating "[t]he phrase 'acting under' is broad and thus we 'liberally construe' this portion of § 1442(a)(1)"); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (holding manufacturer that supplied turbines to U.S. Navy satisfied statute, stating it "liberally construe[s]" the term "acted under").

47.    Moreover, a court must "'credit the [defendants'] theory of the case' to determine whether the [defendant] 'has made an adequate threshold showing that the suit is 'for an act under color of office.'" *Kleinert*, 855 F.3d at 312 (citing *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423,  432 (1999)); *Gov't of Puerto Rico*, 119 F.4th at 192; *Mohr*, 93 F.4th at 104 ; *Agyin v. Razmzan*, 986 F.3d  at 175.

### i.    Express Scripts Is a "Person Acting Under" a Federal Officer's Directions in Administering TRICARE Plans

48.    The DOD contracts with Express Scripts to provide pharmacy benefits to the members of DOD's TRICARE health care program across the country, including Louisiana, in order to satisfy its Congressional mandate to establish an "effective, efficient, integrated pharmacy benefits program" for TRICARE.  10 U.S.C. § 1074g(a)(1); 10 U.S.C. § 1073a.  As the above makes clear, *supra ¶¶* 9-20 at all times, Express Scripts acts under DOD supervision and direction and is "essentially acting as the statutorily authorized alter ego of the federal government."  *Cnty.*

*Bd. of Arlington*, 996 F.3d at 253-54; *see also* 252–54 ("DOD contract . . . made [Express Scripts] directly accountable to the federal government [and]…shall be subject to Contractor desktop audits and, if necessary, on-site audits at the direction of the Government").

49.    Despite its extensive role in supporting TRICARE's pharmacy benefit, Express Scripts has limited autonomy under the contract, acting at all times under requirements, oversight, and control. *See supra* ¶¶ 9-20; *see also Cnty. Bd. of Arlington*, 996 F.3d at 252–54 ("DOD contract . . . made [Express Scripts] directly accountable to the federal government…. [and]…shall be subject to Contractor desktop audits and, if necessary, on-site audits at the direction of the Government").

50.    Multiple federal courts have agreed that Express Scripts' provision of services under the TRICARE Contract satisfies the "acting under" prong of 28 U.S.C. § 1442(a)(1). *See Grider Drugs, LLC* v. *Express Scripts, Inc.*, No. 1:09-cv-00095, Order on Motion to Remand, ECF No. 32 at 6 (W.D. Ky. October 18, 2009), *aff'd*, 500 F. App'x 402, 404 (6th Cir. 2012); *see also Cnty. Bd. of Arlington*, 996 F.3d 243, 254 (4th Cir. 2021); *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006 (N.D. Ohio Jan. 12, 2023). The district court in *Grider Drugs, LLC v. Express Scripts, Inc.* concluded that "when executing its duties under this contract ESI is 'acting under' the Secretary of DOD because it is performing a job that DOD otherwise would have to perform." *Id.*; *see also Grider Drugs, LLC*, 500 F. App'x 402, 404 (6th Cir. 2012) ("The action was properly removed to federal court by Express Scripts."). Similarly, the Fourth Circuit recently observed that Express Scripts, in performing its TRICARE duties, is "acting under" the "subjection, guidance, [or] control" of the DOD, as it does so pursuant to the DOD's "detailed regulation, monitoring, [and] supervision" as spelled out in the TRICARE Contract. *Cnty. Bd. of Arlington*, 996 F.3d at 251-53.

ii.    **Express Scripts Is Also a "Person Acting Under" a Federal Officer's Directions in Administering FEHB Plans**

51.    Express Scripts is also a person acting under a federal officer when it contracts with FEHB-carriers to provide PBM and pharmacy services on behalf of and under the direction of OPM.

52.    As detailed above, in performing its FEHB duties, Express Scripts is subject to OPM's requirements, oversight, and control in administering and supporting these plans, including specific regulations OPM established to govern PBM providers. *See supra* ¶¶ 21-29*; see also* 48 C.F.R. § 1602.170-16(a); 48 C.F.R. § 1604.7201(a); 48 C.F.R. § 1652.204-74(a); 48 C.F.R. § 1652.204-70; 48 C.F.R. § 1652.246-70.

53.    Federal courts of appeal considering the issue have uniformly ruled that entities, such as Express Scripts, administering FEHB plans are "acting under" a federal officer for purposes of 28 U.S.C. § 1442(a)(1) because "OPM enjoys a strong level of guidance and control over" the plan such that the entities administering the plan "ultimately answer[] to federal officers." *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 935 F.3d 352, 356 (5th Cir. 2019); *see also Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 190 (1st Cir. 2024); *Cnty. Bd. of Arlington*, 996 F.3d at 254; *Goncalves ex rel. Goncalves v. Rady Childs. Hosp. San Diego*, 865 F.3d 1237, 1247 (9th Cir. 2017); *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1233-34 (8th Cir. 2012), *abrogated on other grounds by BP P.L.C. v. Mayor and City of Balt.*, 141 S. Ct. 1532 (2021); *Anesthesiology Assocs. of Tallahassee v. Blue Cross Blue Shield of Fla., Inc.*, 2005 WL 6717869, at *2 (11th Cir. Mar. 18, 2005).

**C. The State's Allegations Are Related to Express Scripts' Conduct Performed Under a Federal Officer's Directions**

54.    The Petition details conduct related to Express Scripts' performance of its TRICARE and FEHB duties performed under a federal officer's directions.

55.    Before 2011, the Federal Officer Removal Statute allowed removal only for "any act under color" of office.  28 U.S.C. § 1442(a)(1) (2010).  In 2011, Congress amended the statute's language to "broaden the universe of acts that enable Federal officers to remove to Federal court." *Reed v. Tyson Foods, Inc.*, No. 21-cv-01155, 2021 WL 5107725, at *4 (W.D. Tenn. Nov. 3, 2021) (citing H.R. Rep. No 112-17, pt. 1, at 6 (2011)).  Where previously defendants could only remove suits "for" an act under color of office, the statute now permits removal of suits "for or relating to" any act under color of the federal office.  An action, therefore, is removable under the statute so long as the alleged conduct is "connected or associated with' (or 'related to') a federal directive." *St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.* (*St. Charles II*), 990 F.3d 447, 454 (5th Cir. 2021) (quoting *Latiolais*, 951 F.3d at 291, 296).

56.    By changing the statutory language in 2011, "Congress broadened the Act to cover actions 'not just *causally* connected, but alternatively *connected or associated*, with acts under color of federal office.'" *Id.* at *6 (quoting *Latiolais*, 951 F.3d at 292) ; *accord Cnty. Bd. of Arlington*, 996 F.3d at 256 ("[T]his 'connection or association' standard is broader than the old 'causal nexus' test that we abandoned after the Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545, expanded §1442(a)(1) by inserting 'or relating to' into the third requirement for removal.") (citation omitted).  This new test echoes how the Supreme Court has interpreted the phrase "relating to," which is a "broad" phrase meaning "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (citation omitted) (analyzing the "ordinary

meaning" of "relating to" in context of similarly-worded statute).  It is thus sufficient for a removing defendant to show that its conduct is "connected" or "associated" with federal directions. *Sawyer*, 860 F.3d at 258.

57.    Even under the pre-2011 statutory language, the "hurdle erected by this requirement [was] quite low," requiring only that a removing defendant "demonstrate that the acts for which they are being sued…occurred *because of* what they were asked to do by the Government." *Isaacson*, 517 F.3d at 137.  Further, a court must "'credit [the defendants' theory] of the case' to determine whether the [defendant] 'has made an adequate threshold showing that the suit is 'for an act under color of office.'"  *Kleinert*, 855 F.3d at 312 (citing *Acker*, 527 U.S. at 432); *see also Mohr,* 2024 WL 698074, at *2; *Agyin*, 986 F.3d at 175.

### i.    The States' Allegations Are Related to Express Scripts' TRICARE Activities, Which Are Performed Under a Federal Officer's Directions

58.    The Petition's allegations attack conduct related to Express Scripts' TRICARE activities performed under color of office—that is, providing PBM and pharmacy services to TRICARE beneficiaries pursuant to its agreements with the DOD.

59.    For example, the State's Petition makes allegations concerning Express Scripts' pharmacy network duties—including, for example, that Express Scripts "decide[s] what drugs pharmacies will receive reimbursements for on behalf of patients, and the reimbursement rates;" "impose[s] crippling fees" on pharmacies; and "charges pharmacies various types of Direct and Indirect Remuneration (DIR) fees."  Pet. ¶¶ 35-40.

60.    As described above, *supra* ¶¶ 15-16, Express Scripts performs such pharmacy network duties for TRICARE, including in Louisiana, under the DOD's direction and pursuant to the DOD's detailed specifications.  *See, e.g.*, Exhibit T at C.1 (requiring Express Scripts to "process reimbursements for claims filled at retail network and non-network pharmacies"); C.11.6

(requiring Express Scripts to "reimburse pharmaceuticals dispensed through [retail] pharmacies as directed by the Government" and to pay pharmacies "the submitted costs plus a dispensing fee negotiated by the Government"); G.3.6.7 (detailing process for pharmacy reimbursement); G.3.6.11.1 (requiring that "[c]laims from network pharmacies . . . be paid in accordance with the agreements which exist between [Express Scripts] and its network pharmacies"); *see also Fisher*, 2022 WL 4138863, at *2 ("In its role as TRICARE's pharmacy benefits manager, Express Scripts creates and manages the network of pharmacies eligible to fill TRICARE prescriptions by contracting with those pharmacies….").

61.     The Petition further details Express Scripts' formulary administration activities, which are also required under TRICARE. *See, e.g.*, Pet. ¶¶ 59-63. As discussed above, *supra* ¶¶ 13-14, 17-20, Express Scripts performs these activities in the TRICARE context under the DOD's direction and pursuant to DOD's detailed requirements. *See, e.g.*, Exhibit T at C.1 (requiring Express Scripts to administer DOD's Uniform Formulary).

62.     The State contends it is entitled to discovery on these very practices, which Express Scripts performs on behalf of the DOD in administering its TRICARE contract.

63.     The conduct alleged against Express Scripts is therefore caused by, connected to, and associated with the very tasks it must carry out for the DOD in administering TRICARE plans.

### ii. The States' Allegations Are Related to Express Scripts' FEHB Activities, Which Are Performed Under a Federal Officer's Directions

64.     The State's claims are also related to Express Scripts' federal FEHB duties performed under the direction of OPM.

65.     The Petition details Express Scripts' rebate negotiations with manufacturers conducted on behalf of FEHB-carriers, and the corresponding rebates and payments that manufacturers pay under the resulting agreements. *See, e.g.,* Pet. ¶¶ 61-68; 77-80. Express Scripts

collected those rebates under the direction and supervision of OPM, and those collections have been subject to OPM audit.  Standard Cont. Changes at 1.26.

66.     As discussed above in the TRICARE context, the State's Petition makes several allegations concerning Express Scripts' pharmacy network duties.  Express Scripts provides and manages retail pharmacy networks for FEHB-carriers, which include pharmacies in Louisiana. *See* Pet. ¶¶ 27, 29, 35-36, 48-53, 55-57.  In doing so, Express Scripts is required to comply with detailed OPM "standards related to pharmacy network management."  FEHB Standard Cont. at I-17-22.

67.     The conduct alleged against Express Scripts is therefore caused by, connected to, and associated with Express Scripts' FEHB duties.

### D.  Express Scripts Has Colorable Federal Defenses

68.     Several colorable federal defenses apply to this Action.

69.     To be "colorable," a federal defense need only be "plausible."  *Latiolais*, 951 F.3d at 297.  There is no need for the court to determine whether the claim would succeed.   *Kleinert*, 855 F.3d at  312  ("courts must 'credit [the defendants'] theory of the case' to determine whether the [defendant] 'has made an adequate threshold showing that the suit is 'for an act under color of office'"); *see also In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *8 ("[T]he ultimate validity of the preemption defense is yet to be determined.  At this stage, however, the Express Scripts Defendants have a colorable argument that the DOD contract preempts the plaintiffs' state law claims.").  Rather, a federal defense is colorable so long as it is not "'immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous.'" *Latiolais*, 951 F.3d at 297 (citation omitted).

### i.   Express Scripts Has Colorable Defenses Related to its TRICARE Duties

70.    Express Scripts has colorable defenses related to its TRICARE duties because the TRICARE statute and related regulations preempt inconsistent state action and because Express Scripts is a federal contractor under the TRICARE Contract.

71.    Express Scripts can raise a preemption defense pursuant to federal statutes governing TRICARE.  The TRICARE legislation and regulations directs the Secretary of Defense to enter into contracts with private companies to deliver health care services to TRICARE program beneficiaries, *see* § 1074(g), and preempts state laws to the extent they are "inconsistent with a specific provision of the contract" or would interfere with the "implement[ation] or administ[ration] [of] the provisions of the contract or . . . achievement [of] any other important Federal interest."  10 U.S.C. § 1103(a); *see also* 32 C.F.R. § 199.17(i) ("preemption of State and local laws relating to health insurance…necessary to achieve important Federal interests, including…the assurance of uniform national health programs…at the lowest possible cost to the [DoD]").  The TRICARE Contract thus has preemptive force against the State's TRICARE-related claims.  *See In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *8 (finding Express Scripts' preemption defense colorable); *Grider Drugs, LLC*, No. 1:09-cv-00095, Order on Motion to Remand, ECF No. 32, at 6 (W.D. Ky. October 18, 2009) (same).

72.    Express Scripts can also raise the federal contractor defense relating to its TRICARE duties, which applies when "(1) the 'government approved reasonably precise specifications'; (2) the contractor's performance 'conformed to those specifications'; and (3) the contractor alerted the government to dangers 'known to [the contractor] but not to the United States.'"  *Cnty. Bd. of Arlington*, 996 F.3d at 255 (alteration in original) (finding Express Scripts asserted a colorable federal contractor defense).  The defense protects from "tort liability that arises as a result of the contractor's 'compli[ance] with the specifications of a federal government

contract.'" *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (alteration in original) (citing *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1000 (9th Cir. 2008)).

73.     As discussed herein, *supra* ¶¶ 58-63, the PBM and pharmacy related allegations against Express Scripts are necessarily related to the specifications set forth by the DOD in the TRICARE Contract.  As such, Express Scripts can plausibly assert that it is entitled to government contractor immunity because its challenged conduct conformed with the DOD's contractual specifications.

**ii.     Express Scripts Has Colorable Defenses Related to its FEHB Duties**

74.     Express Scripts has a colorable federal preemption defense relating to its FEHB duties.  FEHB's preemption clause provides that "[t]he terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1).  Thus, the terms of FEHB contracts supersede state law.  *Coventry Health*, 581 U.S. at 99.  Because the State challenges Express Scripts' activities that OPM regulates under its contracts with FEHB carriers, Express Scripts has a colorable federal preemption defense.  *See, e.g., Goncalves*, 865 F.3d at 1249; *Jacks*, 701 F.3d at 1235.

75.     Similar to the TRICARE context, *see supra* ¶¶ 72-73, Express Scripts may also plausibly raise a federal contractor defense based on its challenged conduct conforming with OPM's detailed specifications for FEHB.

76.     Express Scripts has therefore satisfied all prongs of the Federal Officer Removal Statute based on its TRICARE and FEHB activities.

**SUPPLEMENTAL JURISDICTION**

77.    The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over all other claims in this action because they form part of the same case or controversy under Article III of the United States Constitution.

## PROCEDURAL COMPLIANCE

78.    All procedural requirements for removal which apply under 28 U.S.C. § 1446 and this Court's Local Civil Rules have been satisfied.

### A.  Notice Is Timely

79.    This Notice of Removal is timely because it is filed within 30 days of the date of service of the Petition on Removing Defendants.  28 U.S.C. § 1446(b)(1).

### B.  All Defendants Need Not Consent To, and Co-Move For, Removal

80.    The federal-officer-removal statute does not require other Defendants to consent to removal.  *Humphries*, 760 F.3d at 417 ("Removal under § 1442(a), unlike removal under § 1441, does not require the consent of co-defendants."); *see also Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1375 (5th Cir. 1980) ("[W]hen a federal officer exercises his prerogative under 28 U.S.C. § 1442(a)(1) to remove any 'civil action' commenced against him in state court, the entire case against all defendants, federal and non-federal, is removed to federal court regardless of the wishes of his co-defendants.").

### C.  All Other Procedural Requirements Are Satisfied

81.    In accordance with 28 U.S.C. § 1446(a), "a copy of all process, pleadings, and orders" served on Removing Defendants in the State Court Action are attached as Exhibits A-S.

82.    The Civil Cover Sheet, together with this Notice and its Exhibits, has been filed with this Court.

83.      In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice, Removing Defendants will serve a copy of this Notice on the State and will file a copy of the Notice with the Clerk for the Court for the 19th Judicial District Court East Baton Rouge Parish.

84.      Nothing in this Notice should be interpreted as a waiver or relinquishment of any of Removing Defendants' rights to assert any and all defenses or objections to the Petition, including but not limited to, personal jurisdiction.

85.      If there are any questions that arise as to the propriety of removal of this Action, Removing Defendants respectfully request the opportunity to submit briefing, argument, and additional evidence as necessary to support removal.

86.      Removing Defendants reserve the right to amend or supplement this Notice.

## CONCLUSION

WHEREFORE, Removing Defendants hereby remove this Action to this Court for further proceedings according to law.

Dated:  January 27, 2025                              Respectfully submitted,

**RULE GARZA HOWLEY LLP**                      /s/: Keith W. McDaniel
                                                KEITH W. McDANIEL, T.A. (Bar No.
William Dolan*                                  17992)
Emily M. Renzelli*                              **McCRANIE, SISTRUNK, ANZELMO,**
901 7th Street NW, Suite 600                    **HARDY, McDANIEL & WELCH,**
Washington, D.C. 20001                          **LLC**
Telephone: (202) 843-9280                       195 Greenbriar Boulevard, Suite 200
dolan@rulegarza.com                             Covington, LA 70433
renzelli@rulegarza.com                          Telephone:  (504) 831-0946
*(*motions to appear pro hac vice*              Facsimile:  (800) 977-8810
*forthcoming)*                                  Email:kmcdaniel@mcsalaw.com

*Counsel for Express Scripts, Inc. and The Cigna Group*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 27, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties in this case by operation of the Court's CM/ECF system.

<div align="center" style="margin-left:40%">

*/s/ Keith W. McDaniel*
Keith W. McDaniel

</div>